# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**GREG JOLIVETTE,**

      **Plaintiff,**

-v-                                **Case No.: 2:12-cv-603**
                                          **JUDGE SMITH**
                                          **Magistrate Judge Deavers**

**JON HUSTED, OHIO SECRETARY OF
STATE, *et al.*,**

      **Defendants.**

## OPINION AND ORDER

Plaintiff, Greg Jolivette, has filed a Motion for Preliminary Injunction against Jon Husted,

in his official capacity as the Ohio Secretary of State, and Frank Cloud, Tom Ellis, Judith Shelton,

and Bruce Carter, in their official capacity as members of the Butler County, Ohio, Board of

Elections,[1] seeking an injunction prohibiting Defendants from denying Plaintiff's candidacy as an

independent candidate for the Office of State Representative for Ohio's 51st House District at the

November 6, 2012 general election (Doc. 3). Additionally, the individual defendant members of

the Butler County Board of Elections moved to dismiss Plaintiff's complaint for failure to state a

claim as to these individual Defendants, and for lack of subject matter jurisdiction (Doc. 13).

These motions have been briefed, and the Court held a hearing on the motions. Therefore, this

---

[1] Plaintiff initially named the individual Defendants as defendants in both their official and individual capacity, but Plaintiff withdrew his claims against the individual Defendants in their individual capacities (Doc. 10).

matter is ripe for disposition.[2]  For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.  The Court also **DENIES** the Motion to Dismiss for lack of subject matter jurisdiction filed by Defendants Frank Cloud, Tom Ellis, Judith Shelton, and Bruce Carter, and **DENIES as moot** these Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted.

## I.      Background

Plaintiff Greg Jolivette is a resident and qualified elector of Ohio's 51st House District, which is located within Butler County, Ohio.  Defendant Jon Husted is the Secretary of State of Ohio and, as such, is Ohio's chief elections officer.  Defendants Frank Cloud, Tom Ellis, Judith Shelton, and Bruce Carter are the members of the Butler County Board of Elections (the "Board of Elections").

From approximately 1997 to 2010, Plaintiff served as a Republican State Legislator and then as a Republican Butler County Commissioner.  Plaintiff was also elected to, and served on, the Butler County Republican Party's Central Committee from 2008 until he resigned from this position in mid-December 2011.

On December 7, 2011, Plaintiff filed four Declaration of Candidacy and Petition forms ("part-petitions") as a Republican candidate for nomination for State Representative for Ohio's 51st House District.  On his Declaration of Candidacy forms, Plaintiff declared that it was his "desire to be a candidate for nomination to the office of State Representative as a member of the

_____

[2] After review of the parties' submissions, the Court suggested a consolidation of the hearing with a trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2).  The parties have agreed that all facts and applicable law are before the Court, and that this action is ripe for full adjudication on its merits.

Republican Party from the 51st District," and that "if elected to this office or position, I will qualify therefor, and I will support and abide by the principles enunciated by the Republican Party." Plaintiff signed three of the Declarations and dated these documents on October 12 and 13, and November 3, 2011. Plaintiff did not, however, sign the Declaration of the fourth form that was submitted. Plaintiff sought the endorsement of the Butler County Republican Party for the nomination at the endorsement meeting held early December 2011. Wes Retherford also sought the party's endorsement. According to Plaintiff, his opponent "had absolutely no qualifications" to serve. (Aug. 6, 2012, Tr., p. 12). Neither Plaintiff or his opponent received the endorsement because neither reached the required threshold number of votes. Plaintiff was upset when he did not receive the endorsement. Considering his opponent's lack of qualifications as compared to his own, Plaintiff could not believe that the party would "turn their back on me with regards to this comparison." *Id.* Not getting the endorsement "rocked [Plaintiff's] world," and he started to think that "the Party just doesn't want [him]". *Id.*

On December 12 or 13, 2011, Plaintiff learned that there were some problems with his petitions, and he consulted an attorney regarding the matter. To qualify for the Republican primary ballot, Plaintiff needed 50 valid signatures on his Republican petitions. Plaintiff had submitted four part-petitions with a total of 72 signatures. The part-petition that Plaintiff failed to sign had 17 signatures, and the other three petitions that Plaintiff submitted had 6 signatures with questionable validity.

On December 14, 2011, the Board of Elections met to certify candidacies, including the candidacy of Plaintiff. Whether Plaintiff met the signature requirement was at issue at the meeting. Plaintiff and his attorney addressed the Board members to advocate his position that

there was substantial compliance with the signature requirements and therefore his candidacy should be certified. Plaintiff brought affidavits of two persons whose signatures were in question, in an attempt to seek validation and to meet the signature threshold of 50. Plaintiff also offered to bring the individuals before the Board of Elections to testify. Counsel for the Board of Elections advised it that the law did not favor Plaintiff's position. The Board of Elections decided to provide Plaintiff additional time to present additional evidence or arguments in support of his candidacy, or to otherwise consider his candidacy. At that time, Plaintiff still intended to run as a Republican, but was contemplating his option to run as an independent.

The day after the December 14, 2011, Board of Elections meeting, Plaintiff met with Defendant Husted, whom Plaintiff had served with in the legislature, to discuss his candidacy and the problems with his petitions. Plaintiff initiated the meeting with Defendant Husted to get his view on the contested signatures, within the context of Plaintiff's contemplation regarding whether to continue to seek his candidacy as a Republican or to possibly run as an independent. That is, Plaintiff was "looking at what [his] options could quite possibly be." (Aug. 6, 2012, Tr., p. 15). Plaintiff did not indicate to Defendant Husted his escalating dissatisfaction with the Republican Party. Defendant Husted indicated that he viewed Plaintiff's failure to sign the one petition as a fatal flaw, but was not decisive on whether two of the challenged six signatures could somehow be validated by affidavit or otherwise. At a minimum, whether Plaintiff's candidacy as a Republican was going to be approved by the Board of Elections remained uncertain after Plaintiff met with Defendant Husted. However, Plaintiff believed that he was permitted under Ohio law to withdraw his candidacy as a Republican, and subsequently run as an independent, as long as the Board of Elections had not taken action on his candidacy as a Republican.

On December 19, 2011, Plaintiff withdrew his partisan candidacy prior to the Butler County Board of Elections taking any formal action to certify his petition. Also on December 19, 2011, Plaintiff resigned as a member of the Butler County Republican Party Central Committee. When Plaintiff withdrew his candidacy as a Republican, he was "not entirely" sure that he was going to run as an independent candidate, even though he knew he "was finished with the Republican Party at that point." (Aug. 6, 2012, Tr., p. 17). Plaintiff did not consider running as a Democrat because he "wasn't anywhere near their philosophy of government." *Id.*

Plaintiff asserts that he left the Republican Party because his relationship with the party had deteriorated over the course of time. Plaintiff cites several circumstances that contributed to his discontentment with the Republican Party. First, at a Republican party endorsement meeting in 2004 or 2005, someone presented a police report that was based on a completely baseless allegation that Plaintiff stole a purse, in an apparent attempt to hinder Plaintiff's effort to get the party's endorsement for county commissioner. Plaintiff was upset that the party allowed such a baseless report to be distributed at the meeting. Second, Plaintiff did not receive the party endorsement when he ran for County Commissioner in 2010, even though he was an incumbent. According to Plaintiff, he was defeated in the 2010 Republican primary for County Commissioner because he did not receive the party endorsement. At that time, Plaintiff viewed his "partnership" with the Republican Party as "getting to be very shaky." (Aug. 6, 2012, Tr., p. 11). Third, in early December 2011, Plaintiff sought, but did not receive, the Republican Party's endorsement for candidacy for state representative. Finally, Plaintiff was generally upset with both the Republican and Democratic parties in view of the amount of money spent on a high profile collective bargaining issue that was on the November 2011 general election ballot in Ohio.

According to Plaintiff, the matter should have been resolved "with some good compromise and good legislative leadership on both sides." *Id.* at 18.

On February 22, 2012, Plaintiff prepared a Nominating Petition and Statement of Candidacy to run as an independent candidate for election to the office of State Representative for Ohio's 51st House District. On March 5, 2012, Plaintiff filed with the Butler County Board of Elections a Nominating Petition and Statement of Candidacy, seeking to be an independent candidate for election to the office of State Representative for Ohio's 51st House District. Plaintiff views himself as "the best candidate for being a State Representative [for the 51st District], regardless of any political ties." (Aug. 6, 2012, Tr., p. 18). Plaintiff did not vote in the March 6, 2012 primary election of any political party. According to Plaintiff, he has not "done anything to jeopardize or compromise [his] position as an Independent." (Aug. 6, 2012, Tr., p. 19). Plaintiff has testified that, when he filed to run as an independent, he considered himself an independent, and that he takes very seriously his obligation not to commit election falsification as it relates to the documents he submitted in support of his independent candidacy.

As of the date of Plaintiff's filing to run as an independent, he had a "Designation of Treasurer" on file with the Board of Elections. The document was filed with the Board of Elections on July 15, 2008, and it identifies his campaign committee as "Friends of Greg Jolivette." The Designation of Treasurer indicated that he was affiliated with the Republican Party. Plaintiff filed an amended Designation of Treasurer on May 4, 2012, again identifying his campaign committee as "Friends of Greg Jolivette," but indicating that the reason for the filing of the form was to identify himself as an independent candidate.

On April 19, 2012, three individuals filed a protest, pursuant to Ohio Revised Code §

3513.262, against Plaintiff's candidacy for the office of State Representative for Ohio's 51st House District, challenging his ability to run as an independent candidate.

On May 16, 2012, the Butler County Board of Elections approved Plaintiff's Petition, certified Plaintiff to the ballot, and set a date for a protest hearing. On May 30, 2012, the Butler County Board of Elections conducted a protest hearing. Plaintiff testified at the hearing. At the conclusion of the hearing, two Board members, Defendants Ellis and Shelton, voted to grant the protest, and two Board members, Defendants Cloud and Carter, voted to deny the protest, resulting in a 2-2 tie vote. The matter was referred to the Ohio Secretary of State pursuant to Ohio Revised Code § 3501.05, and on June 26, 2012, Defendant Husted broke the tie in favor of the protest when he concluded that Plaintiff is "not unaffiliated and cannot run as an independent candidate for this election."

On July 9, 2012, Plaintiff initiated this action seeking a preliminary injunction prohibiting the Defendants from denying his candidacy as an independent candidate for the Office of State Representative for Ohio's 51st House District at the November 6, 2012 general election. Plaintiff asserts that Defendants' decision to grant the protest, thereby preventing his name from being placed on the ballot as an independent candidate for the Office of State Representative for Ohio's 51st House District at the November 6, 2012 general election, violates his rights under the United States Constitution. First, Plaintiff claims that Defendants' finding that he is affiliated with a political party, and therefore ineligible to run as an independent candidate, violates his First Amendment Speech and Association Rights (Count I). Second, Plaintiff claims that Ohio's statutes regarding party disaffiliation violate his First Amendment, Equal Protection, and Substantive Due Process rights because the statutes unconstitutionally treat independent

candidates differently than candidates affiliated with a political party (Count II). Third, Plaintiff

claims that Ohio's statutes regarding petition protests violate his First Amendment, Equal

Protection, and Substantive Due Process rights because the statutes unconstitutionally treat

independent candidates differently than candidates affiliated with a political party (Count III).

Defendants Frank Cloud, Tom Ellis, Judith Shelton, and Bruce Carter (collectively the "Defendant

board members"), in their official capacity as members of the Butler County, Ohio, Board of

Elections, move to dismiss all claims for failure to state a claim upon which relief can be granted,

and they move to dismiss Count I for lack of subject matter jurisdiction (Doc. 13).

The parties have fully briefed the merits of Plaintiff's Motion for Preliminary Injunction

and the Defendant board members' Motion to Dismiss. This Court heard testimony and argument

on this matter on August 6, 2012. These motions are therefore ripe for disposition.

## II.   Defendant Board Members' Motion to Dismiss

Because the Defendant board members' Motion to Dismiss concerns the threshold matter

of subject matter jurisdiction, the Court will address it first. The Defendant board members argue

that Count I of the Complaint should be dismissed because the Court lacks subject matter

jurisdiction to order the relief requested. Specifically, as it relates to Count I, these Defendants

argue that this Court is without jurisdiction to review whether Defendants incorrectly determined

that Plaintiff failed to meet Ohio's statutory definition of an "independent candidate," and the

Court cannot instruct Defendants to comply with state law. The Defendant board members also

argue that they are not proper parties to this action and should be dismissed as parties pursuant to

Federal Rule of Civil Procedure 12(b)(6).

The Defendant board members are correct in asserting that Plaintiff's challenge of

Defendants conduct in this case relates to the factual determination regarding whether he is an "independent candidate," as that term is defined for the purpose of Ohio election law. However, the gravamen of Count I of Plaintiff's Complaint is that Defendants' application of the Ohio definition of "independent candidate" set forth in Ohio Revised Code § 3501.01(I), violates his First Amendment rights. Therefore, while Plaintiff may be challenging the underlying factual determination of whether he is an independent candidate, he also alleges that the application of Ohio law to him by Defendants violates his First Amendment rights. Plaintiff alleges that the Defendant Board members played a role in unconstitutionally applying the Ohio law. The Court thus has jurisdiction to review this claim. Accordingly, insofar as these Defendants request dismissal of Count I for lack of subject matter jurisdiction, the Motion to Dismiss is **DENIED**. In regard to the Defendant board members' argument that they are not proper parties in this action, the Court need not resolve this issue because, for the reasons expressed below, Plaintiff is not entitled to the requested preliminary injunction. Accordingly, to the extent these Defendants request dismissal for failure to state a claim, their Motion to Dismiss is **DENIED as moot**.

## III. Plaintiff's Motion for Preliminary Injunction

### A. Standard of Review

The Court must consider four factors in determining whether to issue a preliminary injunction and/or permanent injunction:

> (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the relief requested; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest will be served by issuance of the injunction.

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir.

2004).  These four factors are "to be balanced, not prerequisites that must be met."  *Hamad v. Woodcrest Condominium Assoc.*, 328 F.3d 224, 230 (6th Cir. 2003); *see also Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004).

**B.    Discussion**

**1.    Likelihood of success on the merits**

Plaintiff asserts three claims pursuant to 42 U.S.C. § 1983.  First, Plaintiff argues that Defendants' finding that he is affiliated with a political party, and therefore ineligible to run as an independent candidate, violates his First Amendment Speech and Association Rights.  Second, Plaintiff argues that Ohio's statutes regarding party disaffiliation violate his First Amendment, Equal Protection, and Substantive Due Process rights because the statutes unconstitutionally treat independent candidates differently than candidates affiliated with a political party.  Third, Plaintiff argues that Ohio's statutes regarding petition protests violate his First Amendment, Equal Protection, and Substantive Due Process rights because the statutes unconstitutionally treat independent candidates differently than candidates affiliated with a political party.

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A § 1983 claim must satisfy two elements: "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law."  *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995).

-10-

The Court first will address Plaintiff's First Amendment argument and then will address Plaintiff's two Equal Protection arguments together.[3]

### a. First Amendment

Plaintiff argues that Defendants' decision that would preclude him from running as an independent candidate violates his First Amendment rights to free speech and association. Plaintiff argues that preventing his access to the ballot as an independent is a restraint on his ability to exercise his speech rights as an independent, and to associate with others who are like-minded. In support of his position, Plaintiff cites the important role of independent candidates in the American political system. Additionally, Plaintiff argues that his claim of independence was made in good faith, and that this case is factually distinguishable from *Morrison v. Colley*, 467 F.3d 503 (6th Cir. 2006), a case in which the Sixth Circuit found that the candidate's claim of unaffiliation with a political party was not made in good faith. In fact, at the hearing before this Court, Plaintiff testified that he disaffiliated from the Republican Party when he withdrew his partisan candidacy and withdrew from the central committee, and that he made his disaffiliation decision in good faith.

Defendant Husted argues that he did not violate Plaintiff's First Amendment rights because Plaintiff's claim of independence was not made in good faith, but "was a disingenuous attempt to gain ballot access at any cost." (Doc. 19, p. 8). Therefore, at issue is whether

---

[3] Although Plaintiff generally alleges that Defendants violated his substantive due process rights, this claim is not developed and appears to fully overlap his First Amendment and Equal Protection claims. As such, the Court will focus its analysis on whether Defendants violated Plaintiff's First Amendment and Equal Protection rights. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim.").

Defendants' application of Ohio law to preclude Plaintiff from running as an independent candidate violates his First Amendment rights.

The State of Ohio's "oversight of state and local elections is clearly an important state interest." *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 634 (6th Cir. 2005). "[U]nless a state election regulation places a heavy or severe burden on a party, 'a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.'" *Morrison*, 467 F.3d at 506 (quoting *Clingman v. Beaver*, 544 U.S. 581, 587 (2005)). "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). "'[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). The Supreme Court directs courts, when deciding whether a state election law violates First and Fourteenth Amendment associational rights, to "weigh the 'character and magnitude' of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Id.*, at 434.

The Ohio Supreme Court has outlined some of the important state interests that have been recognized to uphold the constitutionality of various elections provisions as follows:

> (1) having orderly, fair and honest elections instead of chaos, (2) maintaining the integrity of the political process by preventing interparty raids and intraparty feuds, (3) maintaining the integrity of various routes to the ballot, (4) avoiding voter confusion, ballot overcrowding, or frivolous candidacies, (5) ensuring that elections are operated equitably and efficiently, (6) preventing candidacies that are

prompted by short-range political goals, pique, or personal quarrel, and (7) preventing parties from fielding an independent candidate to capture and bleed off votes in a general election that might otherwise go to another party.

*State ex rel. Purdy v. Clermont Cty. Bd of Elections*, 673 N.E.2d 1351, 1356 (1997) (internal citations omitted).

The First Amendment to the United States Constitution protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas. *Colorado Republican Fed. Campaign Comm'n v. Fed. Election Comm.*, 518 U.S. 604, 616 (1996). "The impact of candidate eligibility requirements on voters implicates basic constitutional rights." *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983). The exclusion of candidates from the ballot burdens "voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying point for like-minded citizens." *Id.* at 787-88. Therefore, election statutes "should be liberally construed in favor of those seeking to hold office, in order that the public may have the benefit of choosing from all persons who are qualified." *State ex rel. Allen v. Warren Cty. Bd. of Elections*, 874 N.E.2d 507, 510 (Ohio 2007). However, "splintered parties and unrestrained factionalism may do significant damage to the fabric of government." *Storer v. Brown*, 415 U.S. 724, 736 (1974).

The United States Supreme Court, in *Storer*, upheld a *per se* temporal restriction on the ability of a candidate to claim independence after being a member of a party. In *Storer*, the Court upheld a California statute which denied access to the ballot to any independent candidate who had voted in a party primary or been registered as a member of a political party within one year prior to the immediately preceding primary election. The Court observed: "[T]he one-year

disaffiliation provision furthers the State's interest in the stability of its political system. We also consider that interest as not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status." *Id.* at 736. Restricting such access to the ballot in this manner protects "against independent candidacies prompted by short-range political goals, pique, or personal quarrel." *Id.* In Ohio, there is no such *per se* temporal restriction, but a candidate's ability to run as an independent is restricted by how Ohio defines an "independent candidate." Additionally, there is nothing in Ohio law that precludes the consideration of a temporal factor in evaluating a candidate's disaffiliation from a party.

Ohio defines an "independent candidate" as "any candidate who claims not to be affiliated with a political party, and whose name has been certified on the office-type ballot at a general or special election through the filing of a statement of candidacy and nominating petition, as prescribed in section 3513.257 of the Revised Code." Ohio Rev. Code § 3501.01(I). As made clear by the Sixth Circuit Court of Appeals, a candidate cannot be both an independent and an affiliated party member. *Morrison*, 467 F.3d at 503. Furthermore, an aspiring independent candidate "must actually be independent, rather than merely claim it." *Id.* at 509. That is, a candidate's "claim of independence must be made in good faith–otherwise there would be no reasons for having the claim requirement, and none of the state interests animating the claim requirement would be served." *Morrison*, 467 F.3d at 509; *Cf. McInerney v. Wrightson*, 421 F. Supp. 726 (D. Del. 1976) (only analyzing whether prospective independent candidate objectively disaffiliated from his former party).

Subsequent to the Sixth Circuit's *Morrison* decision, the Ohio Secretary of State issued

Advisory Opinion No. 2007-05, which interprets the *Morrison* decision and establishes further guidelines for boards of elections deciding a candidate's independence. The Advisory Opinion advises that Ohio Revised Code § 3513.257 requires that (1) "an independent candidate actually be unaffiliated, or disaffiliated, from any political party" and (2) "the required claim of unaffiliation by an independent candidate must be made in good faith." Secretary of State Advisory Opinion No. 2007–05, at 3. The Secretary further advised:

> If an independent candidate votes in a party primary election after filing as an independent, the candidate is not actually unaffiliated, and the candidate's claim of independence was either not made in good faith or is no longer current; and
> If an independent candidate was on a political party's central or executive committee at the time he or she filed as an independent candidate, or becomes such a committee member at any time during his or her independent candidacy, the candidate is not actually unaffiliated, and the candidate's claim of independence was either not made in good faith or is no longer current.

*Id.* at 3-4. In addition to these bright line rules, the Secretary directed boards of elections as follows:

> Additionally, as indicated by the [*Morrison*] court, indications of party affiliation such as past voting history, information submitted on required election-related filings, political advertisements, participation as a political party officer or member, or holding a public office for which the office holder was nominated through a political party's primary election and elected on a partisan ticket may serve as evidence, though not necessarily conclusive evidence, of party affiliation to support a protest against an independent candidate's candidacy. For example, voting *history*, alone, is an insufficient basis on which to disqualify an independent candidate because Ohioans are freely entitled to change or revoke their party affiliation at any time. However, voting history, together with other facts tending to indicate party affiliation, may be sufficient grounds to disqualify an independent.

(Emphasis sic). *Id.* at 4.

The standard for determining whether a candidate meets the definition of an "independent candidate" makes it difficult to determine the point of demarcation between a candidate's genuine

and legitimate unaffiliation or disaffiliation and a claim of independence that is actually rooted in intra-party feuding, tactical maneuvering, or political convenience – circumstances that potentially disrupt the integrity of the election process by causing voter confusion or other problems. Consequently, determining whether a candidate is actually unaffiliated or disaffiliated with a political party, and whether the claim of independence is made in good faith, are necessarily fact specific and intensive. This determination requires a thorough review of the candidate's conduct as it relates to party affiliation. Furthermore, the strength of the affiliation is necessarily pertinent when evaluating an asserted disaffiliation, as the candidate must demonstrate that the strings attaching him or her to the party are sufficiently severed, or at least that the candidate has engaged in decisive conduct demonstrating an intent to completely sever those strings, within a context not demonstrating a shift to independence as a means of political convenience or opportunism.

Here, Plaintiff engaged in conduct demonstrating a disaffiliation with the Republican Party, and Defendant Husted does not dispute that Plaintiff has met the objective aspect of the *Morrison* test. For example, Plaintiff withdrew his candidacy from the Republican party and resigned his position on the central committee. Additionally, Plaintiff, unlike Morrison, did not vote in the Republican Party primary after he filed the necessary paperwork to run as an independent. The Court notes that *Morrison*, along with the Secretary of State's Advisory Opinion, places candidates on notice that certain specific conduct, namely voting in a party primary or serving on a party committee, are absolute bars to a good faith claim of independence. And as demonstrated by Plaintiff's testimony, he understood that certain conduct would "jeopardize" his candidacy as an independent. However, that Plaintiff did not engage in this

certain conduct does not end the analysis of whether he is an independent candidate under Ohio law for the purpose of the November 2012 general election.

Morrison's conduct after filing to run as an independent clearly demonstrated his desire to be affiliated with the Republican Party and precluded a finding that he was an "independent candidate" under Ohio law. Advisory Opinion No. 2007–05 appropriately views this conduct as conclusive conduct demonstrating an absence of independence. However, the *Morrison* case, and the Advisory Opinion, recognize that the analysis may extend beyond the bright-line test. That is, even if a candidate does not vote in a party primary after filing as an independent, and does not serve on a party's central or executive committee after filing as an independent, these circumstances do not preclude a finding that the candidate is not unaffiliated or disaffiliated in view of other conduct or circumstances, or a finding that the disaffiliation was not made in good faith. Indeed, a rational candidate attempting to disaffiliate from a party out of political convenience would not engage in such conduct, if the candidate understands that taking certain actions would necessarily preclude running as an independent.

Although Plaintiff took decisive affirmative steps to disaffiliate with the Republican Party, evidence also indicates that Plaintiff's disaffiliation with the Republican Party was driven by political necessity and opportunism. Plaintiff did not withdraw his candidacy immediately after the party endorsement meeting, which, according to Plaintiff, was essentially the proverbial "straw that broke the camel's back." Such an assertion would have weight if Plaintiff had disaffiliated immediately after the meeting. Instead, he continued to press his candidacy as a Republican, advocating for his candidacy as a Republican at the December 14, 2011 Board of Elections meeting, and meeting with Defendant Husted the day after the Board of Elections meeting to see

if Defendant Husted could help him with his situation. Thus, Plaintiff ultimately withdrew his candidacy only after it became increasingly apparent that he did not meet the signatory requirement and the Board of Elections likely would decline to certify his name to the ballot.

Additionally, Plaintiff repeatedly testified that he withdrew his candidacy from the Republican Party because he was upset with the Republican establishment in Butler County due to actions that were taken to discredit him and in failing to support him. However, Plaintiff did not express a change in ideology or policy to explain his disaffiliation with the Republican Party. The Court acknowledges that Plaintiff did not, like Morrison, vote in the partisan primary after seeking to run as an independent. However, Plaintiff's conduct still undermines the integrity of the election process. In the same election cycle, Plaintiff obtained signatures of electors on petitions, bearing his affirmation that he desired to be a Republican candidate and that he would "support and abide by the principles enunciated by the Republican Party."[4] Then, when Plaintiff's candidacy as a Republican became unlikely, he withdrew his partisan candidacy. Sixteen days later, he was obtaining nominating signatures in an effort to run as an independent. Therefore, within the same election cycle, Plaintiff obtained signatures in support of his candidacy as a Republican for the Office of State Representative for Ohio's 51st House District, and then signatures in support of a candidacy as an independent for the same office.

Although neither party cites Ohio Revised Code § 3513.04, the statute appears to have

_____

[4] Ohio Revised Code § 3501.38(I)(2)(a) provides that "No declaration of candidacy, nominating petition, or other petition for the purpose of becoming a candidate may be withdrawn after it is filed in a public office. Nothing in this division prohibits a person from withdrawing as a candidate as otherwise provided by law." Thus, while an individual may withdraw his or her candidacy, a declaration of candidacy or petition may not be withdrawn after it is filed in a public office.

some relevance to the analysis of whether Plaintiff may run as an independent, after withdrawing his candidacy as a Republican, but prior to the Board of Elections taking action on his candidacy. This statute generally prevents a person who "seeks" a party nomination at a primary election from running for the same or a different office at the following general election. In pertinent part, this statute provides:

> No person who *seeks* party nomination for an office or position at a primary election by declaration of candidacy or by declaration of intent to be a write-in candidate . . . shall be permitted to become a candidate by nominating petition or by declaration of intent to be a write-in candidate at the following general election for any office other than the office of member of the state board of education, office of a member of a city, local, or exempted village board of education, office of member of a governing board of an educational service center, or office of township trustee.

(Emphasis added). In *State ex rel. Knowlton v. Noble Cty. Bd. of Elections*, the Ohio Supreme Court addressed the meaning of "seeks" in this provision. 935 N.E.2d 395, 403 (Ohio 2010). In analyzing whether a potential write-in candidacy was barred by this statute, the Ohio Supreme Court determined that the statute was aimed at preventing primary election losers from subsequently attempting to run in the general election as a write-in candidate. *Id.* Because the candidate in *Knowlton* was not on the ballot in the primary election, even though he did attempt to become a party nominee, the Ohio Supreme Court reasoned that he could still run in the general election as a write-in candidate. *Id.*

The potential applicability of Ohio Revised Code § 3513.04 must be analyzed in conjunction with the Ohio Supreme Court's interpretation of Ohio Revised Code § 3513.052, which places "restrictions on seeking multiple offices." *See* Ohio Rev. Code § 3513.052(A). Section 3513.052(G) contains an exception to these restrictions:

> Nothing in this section or section 3513.04, 3513.041, 3513.05, 3513.251, 3513.253, 3513.254, 3513.255, 3513.257, 3513.259, or 3513.261 of the Revised Code prohibits, and the secretary of state or a board of elections shall not disqualify, a person from being a candidate for an office, if that person timely withdraws as a candidate for any offices specified in division (A) of this section [which includes "a state office"] for which that person first sought to become a candidate by filing a declaration of candidacy and petition, a declaration of intent to be a write-in candidate, or a nominating petition, by party nomination in a primary election, or by the filling of a vacancy under section 3513.30 or 3513.31 of the Revised Code.

In *State ex rel. Canales-Flores v. Lucas Cty. Bd. of Elections*, the Ohio Supreme Court ruled that the prospective candidate's first filed nominating petition for a city counsel position precluded the filing of her second nominating petition for the same office. 841 N.E.2d 757 (Ohio 2005). In reaching this conclusion, the Court cited Ohio Revised Code § 3513.261, which prohibits a board of elections from accepting a nominating petition of a person seeking to be a candidate for a municipal office if that person has already filed a nominating petition or declaration of candidacy to be a candidate for a municipal office at the same election.[5] The *State ex rel. Canales-Flores* court reasoned that Section 3513.052 does not prevent the application of Sections 3513.261 and 3513.05 to "bar a second nominating petition for the same office at the same election after the first nominating petition has been ruled invalid." *Id.* at 763.

In view of the *Canales-Flores* decision, the Ohio Secretary of State issued Directive 2011-24, which advised Boards of Elections that "A person who withdraws his or her candidacy for office cannot subsequently file a new declaration of candidacy and petition, or nominating petition, or declaration of intent to be a write-in candidate for the <u>same office</u> at the same

---

[5] The Court notes that, as relevant here, Ohio Revised Code § 3513.257 also contains language prohibiting a board of elections from accepting a nominating petition of a person if that person has already filed, in the same election, a nominating petition or declaration of candidacy for any state office.

election." (Emphasis sic).

Subsequently, in *State ex rel. Coble v. Lucas Cty. Bd. of Elections*, a case cited by Plaintiff, the Ohio Supreme Court ruled that a prospective candidate for the office of municipal judge may timely withdraw as a candidate and then subsequently re-file to run in the same office at the same election. 956 N.E.2d 282 (Ohio 2011). As a result of the *Coble* decision, the Ohio Secretary of State rescinded Directive 2011-24, and issued Directive 2011-29, which generally advised Boards of Elections that "a candidate who timely withdraws that person's candidacy prior to Board action on his nominating petition and prior to the filing deadline may file a new petition even if that petition is for the same office to be elected at the same election as the withdrawn petition as long as the board has not officially acted on the petition."

Unlike the case at bar, the *Coble* case did not involve a candidate disaffiliating from a party to run as an independent. Therefore, the Ohio Supreme Court has not defined the parameters of the applicability of its decisions regarding withdrawn and subsequently refiled candidacies as it relates to candidates who disaffiliated from a party. In the final analysis, the Court must apply the definition of an "independent candidate," as interpreted in *Morrison*, to the facts of this case. That Plaintiff withdrew his candidacy prior to the Board of Elections taking action on it does not eliminate the requirement that he disaffiliate from the Republican Party in good faith in order to run as an independent in the same election for the same office.

After carefully reviewing all of the evidence, including Plaintiff's testimony, there is no question that Plaintiff remained steadfast in his effort to get on the primary ballot as a Republican until it became increasingly apparent that his candidacy as a Republican likely would not be approved by the Board of Elections. Thus, Plaintiff withdrew his candidacy as a Republican once

-21-

it became apparent that he faced a significant hurdle in his path to the ballot. Shortly thereafter, Plaintiff began seeking candidacy as an independent for the same office.

The Court emphasizes that it is not opining on Plaintiff's level of discontent with the Republican Party and his relationship to it. Freedom of thought and assembly are critical to a vibrant democracy and the exchange of ideas. The First Amendment protects these rights. Thus, the Government cannot, and should not, place restraints on an individual's ability to change parties or disaffiliate from a party, outside the context of the individual seeking public office. However, an individual running for public office undermines the integrity of the election process if he or she initially runs as a partisan for a particular office (and affirms allegiance to the party when seeking the necessary petition signatures), and then withdraws that partisan candidacy and attempts to run as an independent, all within the same election cycle.

In sum, while Plaintiff may have had legitimate reasons to be upset with the Republican Party establishment in Butler county, it is clear from the evidence that Plaintiff was motivated in significant part to disaffiliate from the Republican Party and become independent because he wanted access to the ballot as a candidate for the office of State Representative for Ohio's 51st House District, which likely would have been otherwise precluded. This type of political maneuvering must not be condoned, lest the integrity of the political process will suffer.

Accordingly, Plaintiff's First Amendment rights have not been violated. Plaintiff is not an "independent candidate," and therefore is not eligible to run as an independent for the office of State Representative for Ohio's 51st House District in the November 2012 general election.

### b.      Equal Protection

Plaintiff challenges Ohio law as it relates to an individual affiliated with a political party

seeking to become unaffiliated with any political party. That is, Plaintiff challenges Ohio's party disaffiliation provisions. Plaintiff asserts that Ohio law permits an individual affiliated with a political party to freely change to another political party, but leaves it to the discretion of a Board of Elections whether to allow an individual affiliated with a political party to become unaffiliated. Additionally, Plaintiff asserts that Ohio's statutory scheme regarding candidate protests violates his constitutional rights because it permits challenges to be filed against an unaffiliated candidate by electors affiliated with political parties, but does not permit unaffiliated electors to file challenges against partisan candidates. Plaintiff argues that the State does not have a legitimate interest or justification in making these distinctions. Defendant Husted argues that Plaintiff's assertion that Ohio's election laws violate the Equal Protection Clause is meritless because partisan candidates are not similarly situated with independent candidates.

The Equal Protection Clause protects against arbitrary classifications, and requires that similarly situated persons be treated equally. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In the context of comparing independent and partisan candidates, a plaintiff alleging an Equal Protection violation "must establish that the two groups, partisan and independent candidates, are similarly situated with respect to the routes they must take to get on the general election ballot." *Van Susteren v. Jones*, 331 F.3d 1024, 1027 (9th Cir. 2003). In *Van Susteren*, the court found that independent and partisan candidates are not similarly situated under the California election code because "[p]arty candidates must run in a primary election, which is integral to the election process because it serves the important function of winnowing out competing partisan candidates . . . [whereas] an independent candidate need not, and indeed may not, participate in a party primary in order to be on the general election ballot." *Id.* This

reasoning is persuasive here, as partisan and independent candidates in Ohio face different challenges in the election process.

### (1) Changing Parties Versus Party Disaffiliation

As discussed above, for a candidate to be qualified to run as an independent candidate, the individual must actually be unaffiliated or disaffiliated from any political party, and there is a corresponding requirement that the claim of unaffiliation or disaffiliation must be made in good faith. *See Morrison*. There is no similar requirement for a partisan candidate to show that the change in party affiliation was made in good faith.

It is the general rule in Ohio that "No person shall be a candidate for nomination or election at a party primary if the person voted as a member of a different political party at any primary election within the current year and the immediately preceding two calendar years." Ohio Rev. Code § 3513.191(A). However, a person may be a candidate for nomination of any political party at a primary election, regardless of party affiliation established by voting in a prior partisan primary, if the person does not hold elective office, or the person holds an elective office other than the one for which candidates are nominated at a party primary. Ohio Rev. Code § 3513.191(B). Furthermore, notwithstanding the general rule, a person who holds an elective office for which candidates are nominated at a party primary may be a candidate at a primary election for a different party if the person completes and files a declaration of intent to seek the nomination of that party by the 30th day before the filing deadline for the primary election. Ohio Rev. Code § 3513.191(C)(1). A person may file such declaration of intent only once during a period of 10 years after filing the first declaration of intent. Ohio Rev. Code § 3513.191(C)(3).

Thus, while there are restrictions in Ohio as it relates to a candidate changing parties, there

is no requirement that the candidate make the change in good faith, unlike the rule that applies to a candidate who disaffiliates from a party. Plaintiff asserts that this unequal treatment violates his Equal Protection rights.

The Court finds that differences between partisan and independent candidates' paths to the general election ballot lead to the conclusion that they are not similarly situated, and therefore there is no Equal Protection violation. Ohio law sets forth certain filing requirements for a partisan candidate to appear on the primary ballot. The "declaration of candidacy" filing deadline for party candidates is 90 days before the primary election. *See* Ohio Rev. Code § 3513.05. Major party candidates seeking a State Representative position must submit 50 signatures of qualified electors along with the declaration of candidacy. *Id.* The signing electors must be members of the same political party as the political party of the candidate. *Id.*

An independent candidate, however, has different filing and signatory requirements than a partisan candidate. The filing deadline for a person desiring to become an independent candidate is one day before the primary election. *See* Ohio Rev. Code § 3513.257. The independent candidate must file a "statement of candidacy and separate petition papers" bearing the number of signatures of qualified electors, with no restriction as to each elector's party affiliation, determined by a formula that is based on the number of votes cast in the district in the last general election for governor. *Id.* Specifically, if the number of votes cast was 5,000 or more, the candidate must submit signatures of at least one percent of the number of votes cast. *Id.* Here, although the precise number is not pertinent, it is undisputed that Plaintiff was required to, and did submit, hundreds of signatures in support of his independent candidacy.

Furthermore, the requirement that an independent candidate make his or her claim of

disaffiliation in good faith is reasonable because independent candidates do not face political challenge in a primary. That is, even though partisan candidates face a vetting process in party primaries,[6] independent candidates may proceed directly to the general election ballot, assuming all filing requirements are met. Thus, although an independent candidate may be required to submit a significantly higher number of signatures to gain access to the ballot, such a candidate need not face potential elimination in a primary. *See Storer*, 415 U.S. at 733 ("The independent candidate need not stand for primary election but must qualify for the ballot by demonstrating substantial public support in another way."). Morever, as noted above, how Ohio defines an "independent candidate" helps ensure the State's interest in protecting the integrity of the election process. Conversely, as it relates to partisan candidates, these concerns are mitigated in view of primaries which provide an inherent mechanism for party affiliation to be challenged. This statutory scheme is reasonable and is consistent with the different political realities that face partisan and independent candidates. Therefore, the Court is not persuaded by Plaintiff's argument that Ohio's statutory scheme regarding party affiliation violates the Equal Protection Clause.

### (2) Elector Challenge of Candidacy

Plaintiff argues that Ohio law is unconstitutional as it relates to elector challenges of a person's candidacy because it treats partisan and independent candidates differently. It is Plaintiff's position that a statutory scheme that permits any elector to challenge the candidacy of an independent, but only allows electors of the same party of a partisan candidate to challenge

---

[6] The Court recognizes that often partisan candidates are unopposed in the party primary. However, this does not negate the fact that a mechanism exists for someone to challenge the candidate prior to placement on the general election ballot.

such a candidate, is unconstitutional.  The Court disagrees.

Qualified electors may challenge whether a particular candidate is an elector of the state, district, county, or political subdivision in which the candidate seeks a party nomination or election to an office or position, or whether the candidate has otherwise fully complied with Ohio Revised Code Chapter 3513.  Ohio Rev. Code § 3513.05.  As to independent candidates, Ohio Revised Code § 3513.262 provides in part that "[w]ritten protests against nominating petitions [of independent candidates] may be filed by *any* qualified elector eligible to vote for the candidate whose nominating petition he objects to[.]"  (Emphasis added).  As to partisan candidates, Ohio Revised Code § 3513.05 provides in part as follows:

> Protests against the candidacy of any person filing a declaration of candidacy for party nomination or for election to an office or position, as provided in this section, may be filed by any qualified elector who is a member of the same political party as the candidate and who is eligible to vote at the primary election for the candidate whose declaration of candidacy the elector objects to, or by the controlling committee of that political party.

Therefore, while Ohio law permits any qualified elector to challenge the nominating petition of an independent candidate, regardless of party (un)affiliation, protests against the partisan candidacy of any person may only be filed by a qualified elector of the same political party.

The distinction between elector challenges of partisan candidates and independent candidates must be viewed in the context of their respective paths to the general ballot.  While a partisan candidate typically needs fewer petition signatures than an independent to initiate a candidacy, the signatures submitted in support of a partisan candidate must be of members of the same political party.  In contrast, while an independent candidate may need more signatures, the signatures may be of members of any party or no party.  Considering this circumstance, it is

reasonable for Ohio to permit any qualified elector to challenge the candidacy of an independent, but restrict challenges of partisan candidates to qualified electors of the same political party. In other words, partisans and independents face different paths to the general ballot, and the challenge provisions are consistent with that framework.

For these reasons, the Court concludes that Plaintiff has not shown an Equal Protection violation, and therefore his second and third claims are without merit.

### 2. Irreparable harm

Because Plaintiff has not substantially demonstrated a constitutional violation, the Court is unable to conclude that irreparable harm has been established for the purpose of issuing a preliminary and/or permanent injunction.

### 3. Harm to others

While the protection of constitutional rights is always a public interest, there has been no violation of constitutional rights here. Further, if Plaintiff is permitted to run for the Office of State Representative for Ohio's 51st House District, there will be harm to the general public as the integrity of the ballot will be undermined.

### 4. Public interest

The Court finds that in this case the public interest is best served by deferring to Defendants' efforts to ensure the integrity of the election process.

Examining the four preliminary and permanent injunction factors together, the Court concludes that the issuance of a preliminary and/or permanent injunction is not warranted in this instance.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction (Doc. 3), **DENIES** the Defendant board members' Motion to Dismiss for lack of subject matter jurisdiction, and **DENIES as moot** the Defendant board members' Motion to Dismiss for failure to state a claim upon which relief can be granted (Doc. 13).  Final judgment shall be rendered in favor of Defendants and against Plaintiff.

The Clerk shall remove Documents 3 and 13 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**